1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ST. ANTHONY MEDICAL CENTERS,            No.  2:15-cv-01926-KJM-DB

12                    Plaintiff,

13          v.                                ORDER

14   KENT, et al.,

15                    Defendants.

16

17

18          Plaintiff St. Anthony Medical Centers ("St. Anthony"), a federally-qualified health

19   center ("FQHC"), brings this action against the California Department of Health Care Services

20   ("DHCS") and Jennifer Kent, in her capacity as Director of DHCS, alleging it was unlawful for

21   DHCS to not set a new initial prospective payment services rate ("PPS rate") for the Medi-Cal

22   services it provided for the period beginning March 18, 2004.  On March 2, 2016, the court

23   dismissed the complaint under the applicable statute of limitations but granted plaintiff leave to

24   amend if it could cure the deficiency.  ECF No. 22 ("Prev. Order").  Plaintiff filed an amended

25   complaint, ECF No. 23 ("FAC"), and defendants' motion to dismiss the amended complaint is

26   now before the court, ECF No. 25 ("Mot.").  Plaintiff opposes the motion, ECF No. 28 ("Opp'n"),

27   and defendants have replied, ECF No. 29 ("Reply").  The court held a hearing on May 6, 2016, at

28

                                          1

1  which Kathryn Doi appeared for plaintiff and Karli Eisenberg appeared for defendants.  As

2  explained below, the court GRANTS defendants' motion, this time without leave to amend.

3  I.      BACKGROUND

4          A.      Review of Statutory Background

5              In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. § 1396

6  *et seq.*, known as the "Medicaid Act," to provide funding for state-administered Medicaid

7  programs.  *See* FAC ¶ 9.  The states, in accordance with federal law, determine eligibility of

8  particular types of beneficiaries, types and ranges of services, payment levels, and administrative

9  and operative procedures.  *Id.*  Payment for services is made directly by states to the individuals

10  or entities that furnish the services.  *Id.* (citing 42 C.F.R. § 430.0).  A state's participation in the

11  Medicaid program is voluntary, but when a state chooses to participate, it must comply with the

12  provisions of the Medicaid Act and its implementing regulations.  *Alaska Dep't of Health &*

13  *Social Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005).

14  California participates in the Medicaid program through the California Medical Assistance

15  Program ("Medi-Cal"), and has designated DHCS as the agency responsible for its

16  administration.  *See* Cal. Welf. & Inst. Code §§ 10720, 14000 *et seq.*; Cal. Code Regs. tit. 22,

17  § 50000 *et seq.*

18              The Omnibus Budget Reconciliation Act of 1989 (P.L. 101-239) created the

19  FQHC program and made FQHC services mandatory.  *See* 42 U.S.C. § 1396d(a)(2)(C).  FQHCs

20  are health care providers located in medically underserved areas that receive Section 330 Public

21  Health Service Act ("PHS") grants.  *See* FAC ¶ 13.  Other entities that meet the requirements for

22  receiving a PHS grant ("FQHC look-alikes") also qualify as FQHCs.  42 U.S.C. § 1396d(l)(2)(B).

23  To participate in the federal Medicaid program, state plans must reimburse clinics for FQHC

24  services rendered.  *See* 42 U.S.C. §§ 1396a(a)(15), 1396d(a)(2)(C), (l)(2)(B); *see also* Cal. Welf.

25  & Inst. Code § 14132.100(a), (b), & (g).  The Fourth Circuit has provided a thorough overview of

26  the evolution of the federal payment requirements:

27              From 1989 through 2000, the federal Medicaid program required
              States to reimburse FQHCs for "100 percent . . . of [each FQHC's]
28              costs   which   are   reasonable."     42   U.S.C.   § 1396a(a)(13)(C)

2

(repealed 2000).   Congress' purpose in passing this "100 percent reimbursement" requirement was to ensure that health centers receiving funds under § 330 of the Public Health Services Act would not have to divert Public Health Services Act funds to cover the cost of serving Medicaid patients.   The report of the House Budget Committee accompanying the 1989 legislation describes this payment guarantee specifically as follows:

. . .

To ensure that Federal [Public Health Service] Act grant funds are not used to subsidize health center or program services to Medicaid beneficiaries, States would be required to make payment for these [FQHC] services at 100 percent of the costs which are reasonable and related to the cost of furnishing those services.

H.R. Rep. No. 101–247, *reprinted in* 1989 U.S.C.C.A.N. 1906, 2118–19.

To relieve health centers from having to supply new cost data every year, Congress amended the Medicaid Act in 2000 to implement a new *prospective* payment system based on average historical costs plus a cost-of-living factor . . . .

*Three Lower Ctys. Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 297–98 (4th Cir. 2007)

(emphasis in original); *see* FAC ¶ 16.

The prospective payment system, which began with fiscal year 2001, requires state

Medicaid plans to establish an initial year PPS reimbursement rate for each FQHC.  42 U.S.C.

§ 1396a(bb)(2), (bb)(4); Cal. Welf. & Inst. Code § 14132.100(i)(1).  With respect to clinics that

first qualified as FQHCs before the fiscal year 2000, the initial year PPS rate must equal "100

percent of the average of the costs of the center or clinic of furnishing such services during fiscal

years 1999 and 2000 which are reasonable and related to the cost of furnishing such services."  42

U.S.C. § 1396a(bb)(2).  With respect to clinics that first qualified as FQHCs after fiscal year

2000, the initial year PPS rate must be calculated based on the average of the per-visit rates of

other health centers located in the same or adjacent area with a similar case load ("the

Comparables Methodology").  42 U.S.C. § 1396a(bb)(4); Cal. Welf. & Inst. Code

§ 14132.100(i)(1)(A).  For each year after the initial year PPS rate is established, the rate of the

preceding fiscal year is increased by the percentage increase in the applicable Medicare Economic

1  Index ("MEI")[1] for that year, and is adjusted to take into account any increase or decrease in the

2  scope of such services furnished by the center or clinic during that year. 42 U.S.C.

3  § 1396a(bb)(3). In other words, the initial year PPS rate serves as a "baseline per-visit rate to be

4  applied in all future years, adjusted by a cost-of-living index (the [MEI]) and any change in the

5  scope of services." *Three Lower Ctys. Cmty. Health Servs., Inc.*, 498 F.3d at 298.

6          Notwithstanding any other provision, federal and state law also allow state plans to

7  use alternative methodologies to provide for payment in any fiscal year if the methodologies

8  (1) are agreed to by the state and the FQHC; and (2) result in payment to the FQHC of an amount

9  that is at least equal to the amount required to be paid under § 1396a(bb). 42 U.S.C.

10  § 1396a(bb)(6); Cal. Welf. & Inst. Code § 14132.100(i)(1)(D).

11          B.     Factual Allegations

12          The operative first amended complaint makes the following allegations. St.

13  Anthony first qualified as an FQHC look-alike on April 9, 2001, and DHCS established an initial

14  year PPS rate for St. Anthony. FAC ¶¶ 31, 38. St. Anthony did not file its application for

15  recertification with the Health Resources and Services Administration ("HRSA"), so its FQHC

16  status was terminated in May 2003. *Id.* ¶ 32. Termination of its FQHC status resulted in

17  termination of St. Anthony's Medicare and Medicaid Provider Agreements. *Id.* St. Anthony was

18  required to repay to the Medi-Cal program the difference between its higher FQHC PPS rates and

19  the lower Medi-Cal fee for service rates for the period after its FQHC status was terminated. *Id.*

20          In order to regain FQHC status for its clinic sites, St. Anthony was required to

21  submit an initial FQHC designation application to HRSA. *Id.* ¶ 33. St. Anthony's application

22  was approved by HRSA and the Centers for Medicare and Medicaid Services ("CMS") with an

23  effective date of March 18, 2004. *Id.* ¶ 34. St. Anthony then reenrolled in Medicaid and

24  Medicare as an FQHC. *Id.* ¶ 35. An e-mail from a CMS attorney to St. Anthony dated April 1,

25

26          [1] The MEI is "[a] measure of (physician) practice cost inflation developed in 1975 as a
way of estimating annual changes in physicians' operating costs and earning levels." *Medical*

27  *Economic Index*, Segen's Medical Dictionary (2011), *available at* http://medical-
dictionary.thefreedictionary.com/Medicare+Economic+Index (last viewed July 26, 2016).

28

4

1  2004 advised: "St. Anthony's has received a 'new' designation therefore the State has to calculate

2  its prospective payment system (PPS) visit rate to determine reimbursement as well as issue new

3  provider numbers." *Id.* ¶ 36.  St. Anthony submitted a cost report to DHCS for the fiscal period

4  ended June 30, 2004, and DHCS rejected the report, stating that "[i]n order to establish the [PPS]

5  rate, a full year cost report must be submitted for the clinics [sic] first full year; fiscal period

6  ended June 30, 2005." *Id.* ¶ 37.  St. Anthony interpreted the e-mail from CMS and the letter from

7  DHCS as confirming it was necessary to calculate a new PPS rate for the clinic.  *Id.* ¶¶ 36–37.

8  However, rather than establishing a new initial year PPS rate for St. Anthony using the

9  Comparables Methodology, DHCS continued to reimburse the clinic at an interim rate based on

10  the PPS rate it had established for the earlier period of St. Anthony's FQHC designation, adjusted

11  annually by the MEI.  *Id.* ¶ 38.

12            The first amended complaint asserts a claim under 42 U.S.C. § 1983 based on a

13  violation of 42 U.S.C. § 1396a(bb), which provides that a "State plan shall provide for payment

14  for services . . . furnished by a Federally-qualified health center . . . in accordance with the

15  provisions of this subsection," *id.* § 1396a(bb)(1).  *See* FAC ¶¶ 48–49.  Specifically, the first

16  amended complaint alleges it was unlawful for DHCS to not set a new initial year PPS rate for St.

17  Anthony based on the Comparables Methodology in 2004.  *Id.* ¶¶ 38–40.  As a result, each time

18  DHCS annually adjusted the preceding year's rate by the MEI, the resulting amount was less than

19  what DHCS was required to pay under § 1396a(bb).  *Id.* ¶¶ 43–45.  The first amended complaint

20  alleges "[e]ach instance of Defendants making incorrect payments to [St. Anthony] is an

21  independent, wrongful, discrete act that [St. Anthony] challenges by way of this action."  *Id.* ¶ 46.

22            The first amended complaint notes that St. Anthony has had "continuous

23  discussions" with DHCS over the years in an attempt to convince DHCS to recalculate its PPS

24  rate, and sent DHCS a demand letter on July 23, 2015, after their most recent meeting.  *Id.* ¶¶ 40–

25  41.  When DHCS did not respond to the demand letter, St. Anthony filed this litigation.  *Id.* ¶ 41.

26  St. Anthony seeks: (1) a declaration that it was a new FQHC for purposes of setting an initial year

27  PPS rate for the period beginning March 18, 2004; (2) a declaration that DHCS's current payment

28  rate for St. Anthony is, and since at least October 2013 has been, unlawful under federal and state

1    law governing Medi-Cal; (3) a declaration that DHCS is presently obligated to engage in a rate-

2    setting process for St. Anthony consistent with federal and state law governing Medi-Cal; and

3    (4) an injunction requiring DHCS to recalculate St. Anthony's rates beginning October 1, 2013 to

4    comport with the requirements of the laws governing Medi-Cal.  *Id.* at 1–2.

5    II.    <u>LEGAL STANDARDS</u>

6            A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the

7    court's subject matter jurisdiction.  *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

8    1039–40 (9th Cir. 2003).  When a party moves to dismiss for lack of subject matter jurisdiction,

9    "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v.*

10    *Shulman*, No. 12-00639, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012), *aff'd sub nom.*

11    *Boardman v. C.I.R.*, 597 F. App'x 413 (9th Cir. 2015).

12            Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

13    dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

14    P. 12(b)(6).  The motion may be granted only if the complaint "lacks a cognizable legal theory or

15    sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*,

16    707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted).  A claim may be dismissed under Rule

17    12(b)(6) where the facts and dates alleged in the complaint establish that the claim is barred by

18    the applicable statute of limitations. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592

19    F.3d 954, 969 (9th Cir. 2010).

20            Although a complaint need contain only "a short and plain statement of the claim

21    showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

22    to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

23    claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

24    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

25    more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

26    conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

27    *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

28    for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.* A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.   DISCUSSION

A.   State Sovereign Immunity

The court first considers defendants' argument that St. Anthony's claims are barred by the Eleventh Amendment, Mot. 17–20, because this argument implicates the court's jurisdiction, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).[2] The Eleventh Amendment bars suits against states in federal court "unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see*

---

[2] In its March 2, 2016 order resolving defendants' motion characterized as brought under Rule 12(b)(6), the court reached only defendants' statute of limitations argument, because it found dismissal was warranted on that basis alone. Prev. Order 9. The court should have first addressed defendants' sovereign immunity argument, however, because it is jurisdictional.

1     *also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  In *Ex*

2     *parte Young*, 209 U.S. 123 (1908), the Supreme Court created an exception to this general

3     principle by holding that the Eleventh Amendment did not bar a suit seeking prospective

4     injunctive relief against a state official designed to prevent a continuing violation of federal law.

5     *Id.* at 159–60; *see Green*, 474 U.S. at 68.  The Court later explained that "[r]emedies designed to

6     end a continuing violation of federal law are necessary to vindicate the federal interest in assuring

7     the supremacy of that law."  *Green*, 474 U.S. at 68.  However, the Court has refused to extend the

8     *Ex parte Young* exception to claims for retrospective relief.  *Id.*; *Edelman v. Jordan*, 415 U.S.

9     651, 664–65 (1974).  An injunction or declaratory judgment is not available if it "would have

10     much the same effect as a full-fledged award of damages or restitution by the federal court."

11     *Green*, 474 U.S. at 73.  For example, in *Green*, the petitioners had asserted no ongoing violation

12     of federal law, so "the award of a declaratory judgment . . . would [have been] useful in resolving

13     the dispute . . . only if it might [have been] offered in state-court proceedings as res judicata on

14     the issue of liability, leaving to the state courts only a form of accounting proceeding whereby

15     damages or restitution would be computed."  *Id.*

16         Here, DHCS is immune from suit, because it is a nonconsenting state entity, and

17     Congress has not abrogated its immunity.  *See Windward Partners v. Ariyoshi*, 693 F.2d 928, 929

18     (9th Cir. 1982) ("[S]ection 1983 does not abrogate or 'override' the sovereign immunity of the

19     states under the eleventh amendment." (quoting *Quern v. Jordan*, 440 U.S. 332, 341 (1979));

20     *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (finding state agencies

21     immune from suit).  In addition, Ms. Kent, who is sued in her official capacity as the Director of

22     DHCS, is immune from suit insofar as St. Anthony seeks to recover additional payments for past

23     services or a declaratory judgment that defendants violated the law in the past.  *See* FAC at 2, 21

24     (seeking declaration that DHCS's payments since at least October 2013 have been unlawful and

25     seeking injunctive relief requiring DHCS to engage in a rate-setting retroactively to a time period

26     beginning at least as early as October 1, 2013); *Green*, 474 U.S. at 68, 73.  However, under the *Ex*

27     *parte Young* exception, St. Anthony is not barred from seeking an injunction requiring Ms. Kent

28     to recalculate its PPS rate with respect to prospective payments or from seeking a complementary

1   declaratory judgment that Ms. Kent is currently violating the law, because such relief is designed

2   to end a continuing violation of federal law.  *See Green*, 474 U.S. at 68–69.

3         The court DISMISSES all of St. Anthony's claims against DHCS and DISMISSES

4   St. Anthony's claims against Ms. Kent for injunctive and declaratory relief with respect to past

5   payments.  This leaves St. Anthony's claims against Ms. Kent for injunctive and declaratory relief

6   with respect to future payments, if they are not dismissed on other grounds.

7         B.      Statute of Limitations

8         Defendants argue the remaining claims against Ms. Kent should once again be

9   dismissed as time barred.  As the court found in its March 2, 2016 order, the applicable statute of

10  limitations for 42 U.S.C. § 1983 is two years, *see Wallace v. Kato*, 549 U.S. 384, 387 (2007);

11  *Cology Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011), which begins to

12  accrue when the plaintiff "knows or has reason to know" of the injury forming the basis for the

13  action, *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (citation omitted).

14  Prev. Order 5.

15        The parties agree that claims arising from the initial year PPS rate-setting are time

16  barred unless the continuing violation doctrine applies, because St. Anthony did not file the

17  instant action until September 11, 2015, more than ten years after it was recertified as an FQHC.

18  *See* Mot. 7; Opp'n 8–13; *cf. Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (the continuing

19  violation doctrine applies to § 1983 actions).  As explained in the court's previous order, under

20  the continuing violation doctrine, a defendant's independent, wrongful, discrete acts restart the

21  running of the statute of limitations, whereas the continuing inevitable effects of a defendant's

22  prior decision are not actionable.  Prev. Order 6–8; *Pouncil v. Tilton*, 704 F.3d 568, 576–81 (9th

23  Cir. 2012) (comparing *Knox*, 260 F.3d 1009 (inevitable effects), and *Del. State Coll. v. Ricks*, 449

24  U.S. 250 (1980) (same), with *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

25  (discrete acts), and *Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003) (same)).

26        In its March 2, 2016 order, the court dismissed the complaint as time barred,

27  finding the complaint "[did] not allege defendants took any acts that violated the Medicaid Act

28  /////

9

1   after 2004." Prev. Order 8.  The court reasoned,

> [P]laintiff [did] not allege defendants, in calculating the rates for any year after 2004, increased the rate of the preceding year by an incorrect MEI percentage or failed to adjust the rate to take into account a change in the scope of services furnished under § 1396a(bb)(3).  The sole complaint [was] that the initial base rate established in 2004 was incorrect under § 1396a(bb)(4), which, as a result of the formula for calculating payments, inherently led all subsequent payments to be incorrect.

*Id.*  Under *Knox*, the court found "the allegedly incorrect subsequent payments constitute[d] inevitable continuing effects of the 2004 decision, rather than independent subsequent violations or continuing unlawful practices."  *Id.* (citing 260 F.3d at 1013–15).

St. Anthony now advances two theories in an attempt to bring its claim within the statute of limitations.  First, it argues the *Knox* and *Ricks* line of authorities discussed in *Pouncil* does not apply here because defendants never made a final "decision" regarding St. Anthony's "permanent" initial year PPS rate, and instead have reimbursed St. Anthony at a rate based on the PPS rate established for the earlier period of St. Anthony's FQHC designation.  Opp'n 8–11; *see* FAC ¶¶ 31–39, 55.  Second, it argues that each time defendants fail to reimburse St. Anthony at the rate required to be paid under § 1396a(bb) constitutes a discrete violation of the Medicaid Act that restarts the running of the statute of limitations.  FAC ¶¶ 44, 46, 62–63; Opp'n 12–13.

St. Anthony has changed the packaging but not the substance of its claim.  With respect to its first theory, the analysis in *Knox* and *Ricks* did not turn on whether the defendant had made a final "decision," but on when the alleged wrongful acts and resulting injury occurred.  Here, St. Anthony is challenging defendants' acts of using the methodology for previously-existing FQHCs under § 1396a(bb)(3) rather than the Comparables Methodology for newly-established FQHCs under § 1396a(bb)(4) when reimbursing it for the services it provided for the period beginning March 18, 2004.  It seeks "a declaration that it was a new FQHC for purposes of an initial [PPS] rate for the Medi-Cal services it provided for the period beginning March 18, 2004."  FAC at 1.  Defendants were not required to issue an official notice to start the running of the statute of limitations.  Federal claims accrue when a plaintiff "knows or has reason to know" of its injury, *see Bagley*, 923 F.2d at 760, and the first amended complaint establishes that St.

1    Anthony knew or had reason to know of its injury beginning at least as early as 2005, when it

2    began communicating with DHCS about the PPS rate for the period beginning March 18, 2004,

3    *see* FAC ¶¶ 37–38.  When asked at hearing, St. Anthony clarified that it is not making an

4    equitable estoppel argument based on its reliance on any representations made by defendants

5    during their communications, *see, e.g.*, FAC ¶ 40.  St. Anthony's act of sending defendants a

6    demand letter in July 2015 did not somehow independently restart the running of the limitations

7    period.  *See* Opp'n 10; FAC ¶¶ 40–41.  Such an exception would eviscerate the purpose of a

8    statute of limitations.

9            The court rejects St. Anthony's second theory for the same reasons discussed in its

10    March 2, 2016 order.  St. Anthony again does not allege defendants, in calculating the rates for

11    any year after 2004, increased the rate of the preceding year by an incorrect MEI percentage or

12    failed to adjust the rate to take into account a change in the scope of services furnished under

13    § 1396a(bb)(3).  Instead, it once more alleges the PPS rates in the succeeding fiscal years were

14    incorrect solely because the initial year PPS rate for the period beginning March 18, 2004 was not

15    calculated using the Comparables Methodology for "new" FQHCs under § 1396a(bb)(4).  *See*

16    FAC ¶¶ 38–39, 44, 62–63.  St. Anthony has added the allegation that  "[e]ach instance of

17    Defendants making incorrect payments to [St. Anthony] is an independent, wrongful, discrete act

18    that [St. Anthony] challenges by way of this action,"  *id.* ¶ 46; *see also id.* ¶¶ 44, 62–63, but this

19    statement is a legal conclusion that the court need not accept as true, *see Iqbal*, 556 U.S. at 678.

20    Although St. Anthony emphasizes that the purpose behind the reimbursement requirement is to

21    ensure Federal Public Health Service Act grant funds are not used to subsidize health services to

22    Medicaid beneficiaries, Congress provided specific methodologies for calculating an all-inclusive

23    per-visit rate.  *See* 42 U.S.C. § 1396a(bb).  When DHCS recalculates the PPS rate each year, it

24    has no independent duty under the Medicaid Act to review the rate for the preceding fiscal year to

25    ensure it fully reimbursed the FQHC's reasonable costs for that year.  *See* 42 U.S.C.

26    § 1396a(bb)(3).  Section 1396a(bb)(3) only requires the state plan to adjust the rate for the

27    preceding year by the MEI and to account for any changes in the scope of services, and St.

28    Anthony does not dispute this is what defendants did.

1    It is apparent that the heart of St. Anthony's claim is that it was entitled to an

2    initial year PPS rate based on the Comparables Methodology as a "new" FQHC for the period

3    beginning March 18, 2004.  St. Anthony alleges no new facts that alter the court's previous

4    analysis in its March 2, 2016 order, and artful pleading cannot evade the time bar.  *Cf. Pouncil*,

5    704 F.3d at 574–76, 581–83 (carefully considering how to best characterize the nature and

6    "heart" of the plaintiff's claim).  The court again dismisses the first amended complaint as time

7    barred and does not reach defendants' remaining arguments under Rule 12(b)(6).

8         C.    Leave to Amend

9    Having found dismissal warranted, the court next considers whether to give leave

10   to amend.  Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to

11   amend the pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's

12   policy of favoring amendments," *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th

13   Cir. 1989).  "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided

14   by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the

15   pleadings or technicalities.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)

16   (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  However, "liberality in

17   granting leave to amend is subject to several limitations . . . . includ[ing] undue prejudice to the

18   opposing party, bad faith by the movant, futility, and undue delay."  *Cafasso, U.S. ex rel. v. Gen.*

19   *Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1058 (9th Cir. 2011) (internal citations and quotation

20   marks omitted).  In addition, a court should look to whether the plaintiff has previously amended

21   the complaint, as "the district court's discretion is especially broad 'where the court has already

22   given a plaintiff one or more opportunities to amend [its] complaint.'"  *Ascon*, 866 F.2d at 1161

23   (quoting *Leighton*, 833 F.2d at 186 n.3).

24   Here, St. Anthony cannot cure the deficiencies in light of the Eleventh

25   Amendment bar.  Accordingly, the court dismisses the claims against DHCS and the claims

26   against Ms. Kent for injunctive and declaratory relief with respect to past payments without leave

27   to amend as futile.

28

12

The court previously allowed St. Anthony leave to amend the complaint if it could cure the deficiencies as to the statute of limitations, and it has been unable to do so.  St. Anthony has not pled new allegations supporting application of the continuing violation doctrine or establishing an independent, cognizable claim that arose within the limitations period.  Because amendment would be futile, the court dismisses the remaining claims without leave to amend.

IV.      CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss the first amended complaint without leave to amend.  CASE CLOSED.

IT IS SO ORDERED.

DATED:  August 6, 2016.

_____
UNITED STATES DISTRICT JUDGE